The State ex rel. Crider v. Wagers.

---

THE STATE OF MISSOURI *ex rel.* ARIMILDA CRIDER *et al.*, Appellants, v. COLEMAN B. WAGERS *et al.*, Respondents.

Kansas City Court of Appeals, June 8, 1891, and January 18, 1892.

1. **Appellate Practice:** ABSTRACT: TRANSCRIPT. In an appeal under section 2253, Revised Statutes, 1889, if the opposite party does not concur in the abstract furnished, he must file with the clerk of the appellate court and serve the adverse party with his specified objections in order that the transcript may be brought up, otherwise the appellate court will accept the abstract as correct.

2. **Administration:** LIABILITY OF EXECUTORS. Executors are only held responsible for want of due care in protecting the property of the estate from theft and unavoidable accident. The skill and care they are required to use is that which a prudent man exercises in the direction of his own affairs.

3. ————: PAYMENT TO NON-RESIDENT DISTRIBUTEE. An executor is not bound to hunt up a non-resident distributee, and send him money ordered to be paid to him.

4. ————: LIABILITIES OF EXECUTOR TO DISTRIBUTEE: PAYMENT BY INSOLVENT DRAFT. The probate court ordered an executor to pay a certain sum to a non-resident distributee. On receiving a receipt from the distributee, the executor bought a draft from a reputable bank and sent it to the distributee, who, without negligence, proceeded to have the same collected, but the bank failed,

and the draft was not paid. *Held*, the executor owed the money just as if he had never sent the draft at all, and the distributee can maintain an action on his bond, notwithstanding his final settlement and discharge.

5. **Payment**: BILL OR NOTE NOT, WHEN. *Held, arguendo*, the taking of a bill of exchange or note is not payment unless the creditor expressly agrees to take it as payment and runs the risk of its being paid.

*Appeal from the DeKalb Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

REVERSED AND REMANDED (*with directions*).

*Harwood & Miller*, for appellants.

(1) The answer in this case attempts to set up an equitable defense, and the plaintiffs contend that there is no legal or equitable defense in the answer. In support of this contention the plaintiffs rely upon the statute, section 252, page 167, Revised Statutes, 1889. Now it is admitted that Arimilda Crider was a nonresident, and was not in a position to receive her share in person from the executor. It is also admitted that she did not appear by herself or agent to receive the money sued for. (2) In so using her money he simply invested it in a worthless piece of paper, and without any order from the court or from her so to do, and thereby exceeded his powers and made himelf and securities liable. *Garesche v. Priest*, 9 Mo. App. 270; *Clough v. Bond*, 2 Myl. & Cr. 496, cited in 9 Mo. App. on page 273, where the language of Lord COTTENHAM is quoted. How can it be said that the executor in the case at bar strictly pursued the line of duty pointed out by section 252, Revised Statutes, 1889? *Garesche v. Priest*, 9 Mo. App. 273. (3) In the case at bar, as in the case of *Clough v. Bond*, *supra*, good faith has nothing to do with the question, for had the administrator followed the statute the loss would not

have ensued; and, where one of two innocent persons must suffer, the loss should fall upon the one but for whose act the loss would not have occurred. (4) If diligence is used by the creditor and the draft or check is dishonored, it is no payment. *Appleton v. Kennan*, 19 Mo. 637; *Fitzgerald v. Jones*, 33 Mo. 583; *Olcott v. Rathbone*, 5 Wend. 490; *Johnson v. Weed*, 9 Johnson, (N. Y.) 309; Greenleaf on Evidence [Red. Ed.] sec. 520, p. 465; *Riggs v. Goodrich*, 74 Mo. 108; *Thornberry v. Thompson*, 69 Mo. 484. In the case at bar there is no claim of lack of diligence in presenting the draft for payment. Nor is it claimed that there was any agreement that the draft should be received in payment.

*Reed & James*, for respondents.

(1) The petition, answer, reply and judgment are the only record properly before this court, which it can consider in the review of the case, except the record of the taking of appeal. There was no leave given appellant at the April term, 1890, when the case was tried and judgment rendered for defendants, for the filing of a bill of exceptions at a subsequent term of court. (2) This court will presume there was sufficient evidence introduced at the trial to sustain all the issues raised by the pleadings. (3) This leaves the only assignments of errors to be considered here to be the first and second of the six errors complained of; and the first and second are virtually but one alleged error. (4) The answer as pleaded was a good defense. *State ex rel. Townsend v. Meagher*, 44 Mo. 356, 361; *Fudge v. Durn*, 51 Mo. 264; *Booker v. Armstrong*, 93 Mo. 49, 59; *Atterberry v. McDuffee*, 31 Mo. App. 603; Am. & Eng. Enc. of Law, pp. 350, 351, citing: *Clough v. Bond*, 3 My. & Cr. (Eng.) 496; Williams, Exrs. [7 Eng. Ed.] 1817-1820; *Churchill v. Hobson*, 1 P. Wms. (Eng.) 1818; *Knight v. Lord Plymouth*, 3 Atk. (Eng.) 486; s. c., 1 Dick. (Eng.) 120; *Adams v. Claxton*, 6 Ves.

VOL. 47—28

( Eng.) 26 ; *Swinfen v. Swinfen*, 29 Beav. ( Eng.) 211 ; *Johnson v. Newton*, 11 Hare ( Eng.) 160 ; *Mendes v. Guedalla*, 2 Johns. & H. ( Eng.) 259 ; *Fenwicke v. Clarke*, 31 L. J. Ch. ( Eng.) 728 ; *Norwood v. Harness*, 98 Ind. 134 ; s. c., 49 Am. Rep. 739 ; *Twitty v. Houser*, 7 S. C. 153 ; *Jacobus v. Jacobus*, 37 N. J. Eq. 17. ( 5 ) The order of the probate court approving the executor Wagers' final settlement, and discharging him, has the force of a judgment, and is conclusive on the parties, including Arimilda Crider, until reversed on appeal and set aside and opened up on the ground of fraud or mistake, and cannot be attacked in a suit on the executor's bond. Kelley's Probate Guide, sec. 427, with citations ; *State ex rel. Rucker v. Rucker*, 59 Mo. 17 ; *Sheetz v. Kirtley*, 63 Mo. 417 ; *Dix v. Morris*, 66 Mo. 514; *Miller v. Major*, 67 Mo. 247 ; *Smith v. Sims*, 77 Mo. 269. The point which appellant seems to rely on mainly is, that because of the alleged non-residence of Arimilda Crider, the executor would not be protected in obeying the order of the probate court to pay to her the amount due her and getting the receipt therefor ; but there is nothing in the point. The clear meaning of the section of the statute is, that, "If upon final settlement it appear [ to the court] that any legatee or distributee," because of non-residence, " or from any other cause, is not in a situation to receive his share and give a discharge therefor, etc., the court shall order," etc. It will hardly be pretended by appellant that a legatee or distributee, who is a non-resident, is *ipso facto* in a situation not to receive what is due him or give a discharge therefor. It was not that Arimilda Crider was not in a situation to receive a bank draft, and give a receipt therefor, that complaint is made of the executor and his bondsmen.

SMITH, P. J.—This was an action brought by Arimilda Crider with whom was joined as co-relator her husband, Frank Crider, against defendant Wagers and

the other defendants as sureties on his bond, as execu-
tor of the last will of Simpson M. Wagers, deceased.
The breach alleged that there was due the plaintiff,
Arimilda Crider, who was a daughter of the deceased,
the sum of $183.33, which sum was in the hands of
defendant Wagers as executor of said will, and which
had been ordered by the probate court of DeKalb
county to be paid over by said executor to the said
Arimilda Crider, which he had refused to do.

The defendant answered as follows :   "They admit
the execution and delivery of the bond, as alleged and
set forth in said petition ; that there was due from
defendant Wagers, as executor, to Arimilda Crider,
the sum of $183.33, as alleged in said petition, and that
said sum was ordered by the probate court of DeKalb
county, Missouri, to be paid to said Arimilda Crider,
as plaintiff alleges.   And, further answering, the defend-
ants state that immediately thereafter said Wagers wrote
to said Arimilda Crider to send him a receipt for the
sum then owing by him, as executor, to her ; that immedi-
ately after said Wagers received said answer from said
Arimilda Crider, and received such receipt, he bought
a bill of exchange from one bank upon another bank,
payable to the order of said Arimilda Crider, and
mailed the same to her at her address at that time, and
she duly received the same ; that she afterwards
deposited said draft or bill in bank for collection, and
before the same reached the drawer of said draft or bill
the bank drawing the said draft or bill suspended and
failed, and said draft or bill was protested for non-pay-
ment.   Defendants further say that said Wagers bought
said draft of the bank drawing the same ; that said
bank at the time of the purchase of said draft and at all
times heretofore was a reputable bank in the community
where situated, and at all times prior to its actual sus-
pension and failure had the confidence of the people in
the community as a solvent bank; and that said Wagers
had not, prior to the actual suspension and failure of

said bank, any knowledge, information or suspicion of its failing or unsound condition. Defendants further state that said Wagers on the —— day of November, 1888, filed his final settlement as said executor; the same was duly approved, and he was finally discharged by said probate court. Wherefore, defendants pray to be dismissed with their costs in this behalf expended."

A reply in the nature of a general denial of the new matter set up in the answer was filed, and the cause tried at the April term, 1890, before the court, without the intervention of a jury. At the trial, before proceeding with the introduction of any evidence, the plaintiff moved for judgment on the pleadings, which motion was overruled. The defendants then introduced evidence tending to sustain the allegations of the answer. The evidence is quite voluminous, covering more than fifty pages of closely printed matter, but, in the view of the case which we shall presently express, it will be found unnecessary to set forth even an epitome of it in order to get a clear understanding of the questions presented. At the conclusion of the evidence, the relators requested the court to declare the law to be that under pleadings and evidence the judgment should be for the relators. This was refused by the court. Judgment was then rendered for defendants. The relators bring the case here by appeal.

I.   A preliminary question is presented which must be here determined. The relators, in their abstract of the record, state that leave was given them at the April term, 1890, of the court, the term at which the case was tried, to file a bill of exceptions at the following November term. The defendants in their points and authorities state that no such leave was given relators as is shown in their abstract, and for this reason this court cannot review the evidence or rulings of the trial court. In this the defendants are in error. By reference to section 2253, Revised Statutes, under which the appeal in this case was brought here, it will be seen that it is

there provided, that, "in case the opposite party shall not concur in said abstract of the record, he shall specify his objections thereto in writing and file the same with the clerk and serve the adverse party with a copy thereof; and thereupon the clerk of the appellate court shall forthwith issue and send an official order commanding the clerk of the trial court to send such appellate court a certified transcript of that part of the record in dispute, etc. If the course indicated in this statute had been taken by defendants, then we would have been able to decide whether the relator's abstract is true or false in respect to the disputed particulars; but, as it is, we must accept the same as correct, notwithstanding the challenge of the defendants.

II. We think it is quite likely that the relators, upon the undisputed facts of this case, could in equity successfully impeach the final settlement of the executor on the ground of fraud; but, while this may be so, we do not think it necessarily follows that this action at law on the obligations of the executorial bond may not be maintained, and especially so in view of the facts conceded by the answer. Mrs. Crider was a distributee of the estate. It was made the duty of the executor under the order of the probate court to pay her the sum of money sued for. This was one of the duties enjoined upon the executor by law, and the express obligations of the bond. The allegation is that the amount sued for at a certain date was due Mrs. Crider by the defendant executor. This is admitted by him in his answer; but, as an excuse for non-payment thereof, he alleges that he sent her a draft therefor drawn by an insolvent bank in her favor, which, though never paid, he insists was tantamount to payment, and had the effect to discharge his obligation to pay her. The rule, it is true, is quite well settled that executors and administrators are only held responsible for want of due care in protecting property of the estate from theft or loss by unavoidable accident or anything of the kind, and the

care and skill which they are required to use is that which a prudent man exercises in the direction of his own affairs. *Booker v. Armstrong*, 93 Mo. 49; *State ex rel. v. Meagher*, 44 Mo. 357; *Foster v. Davis*, 46 Mo. 268; *Fudge v. Durn*, 51 Mo. 264. So these officers are only responsible for loss by the insolvency of the debtor to an estate, when they have failed to exercise the same care that a prudent man would exercise in the conduct of his own affairs. Williamson Ex'rs, 1910; *Booker v. Armstrong*, *supra.* They are not absolutely insurers of the safety of the funds received by them as is the case with public officers, who receive public funds into their hands *virtute officii.*

But these rules, though invoked by the defendant, are believed to have no application to the facts of this case. Mrs. Crider was a non-resident. of the state, and the executor was not bound to hunt her up and send her the money ordered to be paid to her. He could have obtained an order of the court to loan out the same ( R. S., sec. 252 ), which would have been sufficient excuse for withholding payment. But he elected to send her the money by draft in which he was unsuccessful. If he had owed Mrs. Crider the amount of money due her, for the purchase money of property sold to him by her or for money loaned, would the sending of a draft, in the absence of a request to so send it, or an express agreement to receive the draft as payment, discharge the debt?

It is now the well settled law of this state that the taking of a bill of exchange or note is not payment, unless the creditor expressly agrees to take it as payment and run the risk of its being paid. *Selby v. McCullough*, 26 Mo. App. 66; *Appleton v. Kennan*, 19 Mo. 641; *Leabo v. Goode*, 67 Mo. 126; *Riggs v. Goodrich*, 74 Mo. 112; *Citizens' Bank v. Carson*, 32 Mo. 191; *Howard v. Jones*, 33 Mo. 583. It was admitted that the non-payment of the draft did not result from

any negligence on her part in the presentation of the draft for payment to the bank on which it was drawn. There was no element of negligence in the transaction chargeable to her.   She was in no respect remiss in that diligence which the law exacted of her in respect to the draft.   It is thus seen, that if the amount which is owing Mrs. Crider has been due her from the executor in his individual, instead of in his executorial, capacity, the transaction under review would not have been a payment.

Is the rule different between these parties because Wagers was an executor?   Does that circumstance change the rule of liability?   We do not perceive that the rules which we have stated in respect to the responsibility of executors and administrators are in the least encroached upon by holding the executor in this case still liable to Mrs. Crider for the money he undertook to pay her by draft.   The case must stand just as if the executor had never sent the draft at all.   There has been no payment, nor are any facts shown in the pleadings or evidence which exonerate the executor.   The trial court should have given the declaration of law requested by the relators.

The judgment of the circuit court is reversed, and cause remanded with directions to that court to enter judgment for the relators on the pleadings for $183.33, with interest thereon from November 15, 1887, at the rate of six per cent. per annum.   All concur.